UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

KAYA HOLDINGS, INC., a Delaware
corporation,

    Plaintiff,

v.

DANIEL A. GOLDIN, an individual, and
WALLY D. GOLDIN, an individual,

    Defendants.
_____/

## COMPLAINT

Plaintiff, Kaya Holdings, Inc. ("Kaya"), hereby files this Complaint and sues Defendants, Daniel A. Goldin ("D. Goldin") and Wally D. Goldin ("W. Goldin") (collectively, the "Goldins"), and alleges:

## THE PARTIES

1. Kaya is a Delaware corporation with its home office and principal place of business in Broward County, Florida.

2. D. Goldin is an individual who at all material times resided in Cook County, Illinois, and Portland, Oregon. D. Goldin is W. Goldin's son.

3. W. Goldin is an individual who at all material times also resided in Cook County, Illinois. W. Goldin is D. Goldin's father.

## SUBJECT MATTER JURISDICTION

4. There is complete diversity of citizenship between the parties.

5. As stated above, Kaya is a Delaware corporation with its home office and principal

place of business in Broward County, Florida.  Therefore, Kaya is a citizen of Delaware and Florida for diversity purposes.

6. At all material times, the Goldins resided, and thus were domiciled, in Illinois. Therefore, the Goldins were citizens of Illinois during the relevant time period for diversity purposes.  After the issuance of stock to D. Goldin, but before the Goldins demanded that Kaya's transfer agent remove the restrictive legend from their stock certificates, D. Goldin moved to Portland, Oregon and, upon information and belief, currenly resides there.

7. More than $75,000.00 is at issue in this matter, exclusive of fees, costs and interest. Specifically, the value of the items at issue – *i.e.*, the below-described Kaya shares of stock – exceeds $2.8 million and thus exceeds $75,000.00, exclusive of fees, costs and interest.

## PERSONAL JURISDICTION

8. Under Florida Statute § 48.193(1)(a)(1), this Court has personal jurisdiction over the Goldins based on their solicitation of and making investments in Kaya in Florida.

9. Also, under Florida Statute § 48.193(1)(a)(1), this Court has personal jurisdiction over D. Goldin based on a business relationship with, and consulting services provided to, Kaya and receipt of compensation for same from Kaya in Florida.

10. Under Florida Statute § 48.193(1)(a)(2), this Court has personal jurisdiction over the Goldins because the Goldins committed tortious acts, fraud and/or material omissions, and they knew of same, which touched, concerned, affected and damaged the operations of Kaya in Florida.

11. Under Florida Statute § 48.193(1)(a)(6), this Court has personal jurisdiction over the Goldins because the Goldins caused injury to Kaya in Florida arising out of their material omissions and misrepresentations of failing to disclose D. Goldin's prior criminal record when the Goldins engaged in the solicitation of and made investments in Kaya in Florida and because D.

Goldin solicited and entered into a consulting arrangement with Kaya in Florida.

12. Finally, personal jurisdiction exists in Florida based on the exclusive Florida jurisdiction clause in the Stock Grant Agreement with D. Goldin, which stated:

> In the event that any party brings suit against the other hereunder, such party shall bring such suit in, and each Party consents to **the jurisdiction of, any state or federal court located within Broward County, State of Florida**. Each party . . . (b) waives any objection which it may have based on **lack of personal jurisdiction or improper venue or forum non conveniens** to any suit or proceeding . . . .

(Emphasis added).

## VENUE

13. Venue is proper in this District because Kaya's principal place of business is in Broward County, Florida; the Goldins invested and transacted business there; the Goldins engaged in misconduct that affected Kaya's business there; and a substantial portion of the relevant activities occurred there.

14. Venue is also proper in this District based on the above-quoted language in the exclusive venue clause of the Stock Grant Agreement, which mandates exclusive venue in Broward County, Florida.

## FACTUAL ALLEGATIONS

### A. KAYA'S BUSINESS

15. Kaya is engaged in the business of the emerging legal marijuana industry in the United States in states where the sale of marijuana is legal and operates legal marijuana dispensaries and a grow and manufacturing facility in Oregon, which has legalized both medicinal and recreational marijuana use.

16. Kaya is a publicly-traded company (OTCQB symbol: KAYS) incorporated in Delaware.

17. In order to fund its capital requirements, Kaya has, from time to time, issued securities in private securities sale transactions as permitted under applicable exemptions from the registration provisions of the Securities Act of 1933, 15 U.S.C. § 77a, *et seq*. (the "Securities Act").

### B. D. GOLDIN SOLICITED KAYA

18. Beginning in or around October 2015, D. Goldin contacted Craig Frank, Chief Executive Officer of Kaya.

19. D. Goldin expressed an interest in purchasing stock in Kaya and also expressed an interest in providing consulting services for Kaya.

20. D. Goldin represented himself to Kaya as an expert with extensive experience, knowledge, and contacts in the legal marijuana industry.

21. Employment in the legal marijuana industry is highly regulated, and states, such as Oregon, where Kaya operates, have policies in place to prevent persons with certain recent criminal convictions or a criminal record of certain crimes from working in the industry.

22. When negotiating his consulting contract with Kaya and, with it, his purchase of Kaya stock, D. Goldin failed to disclose to Kaya that he had a criminal history for the manufacture and delivery of cannabis in Cook County, Illinois, which would prevent him from acting as an employee or consultant for Kaya in the legal marijuana industry, particularly in Oregon.

### C. THE GOLDINS' INVESTMENTS

23. D. Goldin invested $100,000.00, or $0.045 per share, in Kaya for 2,222,222 shares of "restricted" Kaya common stock in a private sale transaction, pursuant to a Subscription Agreement between Kaya and D. Goldin (the "D. Goldin Subscription Agreement"). A copy of the D. Goldin Subscription Agreement is attached as Exhibit A. In accordance with the terms of the D. Goldin Subscription Agreement, D. Goldin received Certificate Number 4576 registered to

D. Goldin for 2,222,222 "restricted" shares of Kaya common stock.

24. Also as a result of the initial contact with Kaya, D. Goldin and Kaya agreed to a consulting arrangement, whereby D. Goldin would perform consulting services for Kaya for a period of one year to begin on or around January 1, 2016. Compensation to D. Goldin would include payment of $4,000 per month and the issuance of 250,000 "restricted" shares of Kaya common stock per quarter. Part of the consulting arrangement was memorialized in writing in the Stock Grant Agreement, a copy of which is attached as Exhibit B. Also attached as Exhibit C is the email dated February 15, 2016, documenting other terms of the consulting arrangement.

25. The Stock Grant Agreement provided that D. Goldin would be granted 200,000 Kaya shares, which were to be included on a Registration Statement on Form S-8 to be filed under the Securities Act.

26. The Stock Grant Agreement contains a typographical error regarding the document's date. The document's date should be on or around January 1, 2016, not August 6, 2015, because D. Goldin's consulting services were to begin on or around January 1, 2016.

27. The Stock Grant Agreement states:

> **WHEREAS**, the Company is exploring additional opportunities and markets within the legal medical marijuana and recreational marijuana industries both in the United States and elsewhere in the world; and
>
> **WHEREAS**, the Company is in need of assistance with day-to-day logistical and management assistance with these operations; and
>
> **WHEREAS**, Grantee [D. Goldin] has extensive contacts, experience and knowledge relative to these matters and has provided invaluable assistance and advice to the Company relative to these matters, and will continue to do so for the foreseeable future on the terms and conditions set forth herein . . . .
>
> - **Recitals**. The foregoing recitals are true and correct and incorporated herein by reference.

Exhibit B at 1 (emphasis in original).

28. Thereafter, W. Goldin (D. Goldin's father) invested $100,000.00, or $0.045 per share, in Kaya for 2,222,222 "restricted" shares of Kaya common stock in a private sale transaction pursuant to a Subscription Agreement between Kaya and W. Goldin (the "W Goldin Subscription Agreement"). The W. Goldin investment was completely facilitated by D. Goldin. A copy of the W. Goldin Subscription Agreement is attached as Exhibit D. In accordance with the terms of the W. Goldin Subscription Agreement, W. Goldin received Certificate Number 4575 registered to W. Goldin for 2,222,222 shares of "restricted" Kaya common stock.

29. Kaya sold the stock to the Goldins at a large discount and in a large quantity based on representations by D. Goldin that he was an expert in the legal marijuana industry with experience to work for Kaya and that he would continue to provide services for Kaya in the future.

30. W. Goldin's investment in Kaya was, in reality, a second investment in Kaya by D. Goldin and funded by D. Goldin. Therefore, W. Goldin was merely a straw man for his son's benefit for the second investment in Kaya.

31. Because Kaya's operations are based in Florida, the investment-related activities occurred in Florida.

D. **D. GOLDIN'S BRIEF TENURE WITH KAYA**

32. D. Goldin performed services for Kaya for approximately six (6) weeks through the end of February 2016.

33. D. Goldin received monetary compensation from Kaya for the work he performed. D. Goldin also received Certificate Number 4577 registered to D. Goldin for 250,000 "restricted" Kaya shares.

34. Thereafter, D. Goldin quit, refused to continue as a consultant for Kaya and stated

6

he wanted no further compensation from Kaya.

35. Therefore, the relationship and D. Goldin's services promptly ended. D. Goldin apparently decided to pursue his own marijuana business.

36. The Goldins have communicated with Kaya in writing and/or verbally on countless occasions, so the communications were sent to and/or from Florida, and therefore occurred in Florida.

### E. D. GOLDIN'S CRIMINAL RECORD AND THE GOLDINS' MISSTATEMENTS OF SAME

37. Kaya would not have issued the amount of shares or sold the shares to the Goldins at the price sold but for D. Goldin's representations that he had extensive contacts, experience and knowledge in the legal marijuana industry and that he could provide invaluable services for Kaya. However, these representations were false and misleading.

38. In fact, D. Goldin could not obtain a license to work in the legal marijuana industry. D. Goldin was arrested on July 22, 2011 for a Class 2 felony for violating 720 Ill. Comp. Stat. § 550/5 for the knowing manufacture, delivery, or possession with intent to deliver or manufacture between 500 and 2,000 grams of cannabis. D. Goldin was given credit for his time served on January 26, 2012.

39. In addition, D. Goldin knew, or should have known, that his representation to Kaya that he would continue to provide assistance and services to Kaya for the foreseeable future was impossible as a result of his felony drug charge in Illinois.

40. W. Goldin knew that his son, D. Goldin, had a criminal record for felony possession with intent to distribute in Illinois and knew that this information should have been disclosed to Kaya and that the Goldins failed to disclose that information to Kaya.

41. As stated above, W. Goldin's purported investment in Kaya was, in reality, a second

7

investment in Kaya by D. Goldin and funded by D. Goldin.

42. After the investment by W. Goldin, D. Goldin told Kaya that he had invested in Kaya through his father, W. Goldin, in order to avoid disclosure of his criminal record.

43. Kaya's sales of its stock to the Goldins were "restricted" under applicable rules and regulations under the Securities Act, relating to private sale transactions exempt from the registration requirements, which requires, among other matters, that securities sold in a private transaction be restricted from public resale for specified periods and that the party purchasing such securities stock must agree that the purchase is not for immediate resale and must certify conditions in order for Kaya to sell the securities and ultimately resell the stock in the public market pursuant to Rule 144 under the Securities Act.

44. Kaya sold the stock to the Goldins at a large discount and in a large quantity based on representations by D. Goldin that he was an expert in the legal marijuana industry with experience to work for Kaya. Had the Goldins disclosed and/or had Kaya known that D. Goldin had a felony record for possession with intent to distribute cannabis, Kaya would not have permitted the Goldins' investments in Kaya, and certainly not for the large amount of shares issued or the low price sold, and would not have signed the Subscription Agreements with the Goldins.

45. Had the Goldins disclosed and/or had Kaya known that D. Goldin had a felony record for possession with intent to distribute cannabis, Kaya would not have permitted the consulting relationship with D. Goldin, would not have signed the Stock Grant Agreement with D. Goldin, and would not have agreed to the other consulting terms in the February 15, 2016 email.

46. The fact of D. Goldin's criminal record and the Goldins' misstatements of same jeopardized Kaya's ability to obtain required licenses to operate in the emerging legal marijuana industry.

### F. THE GOLDINS' FAILURES TO SATISFY CONDITIONS PRECEDENT

47. A condition precedent to allowing the restriction to be removed from the shares held by the Goldins and to permit the public transfer of the shares and the registration of such transfer by Kaya's transfer agent, is the absence of any demand that the transfer agent not register the transfer on behalf of Kaya and that the transfer is in fact rightful or is to a protected purchaser.

48. Kaya would not have issued shares to the Goldins at the low price or large quantity obtained had the Goldins disclosed D. Goldin's criminal record. As a result, Kaya has demanded that the registration of transfer be halted.

49. Further, because of this defect, the registration of transfer of the Goldins' shares would not be, in fact, rightful or to a protected purchaser under 6 DEL. C. §§ 8-401(7) or 8-303.

50. Kaya has tendered to the Goldins the purchase price for their shares plus interest, but that tender has been rejected.

51. Based on the above, the Goldins have not and cannot satisfy the conditions precedent to legitimately owning shares in Kaya. In other words, the Goldins are not entitled to remain and should have never been Kaya investors.

52. Moreover, because the Goldins were never entitled to be Kaya investors, the Goldins have not and cannot satisfy the conditions precedent for Kaya to lift restrictions on the sale of "restricted" Kaya stock that they were never entitled to purchase or own in the first place.

53. Notwithstanding the above, D. Goldin never fully performed the one-year consulting arrangement, so he has not and cannot satisfy the conditions precedent for being issued and holding valid ownership of any shares granted under the consulting arrangement, including the 250,000 "restricted" shares which were to be issued on a quarterly basis pursuant to the consulting arrangement or the 200,000 shares granted under the Stock Grant Agreement.

54. In addition, because D. Goldin never fully performed the one-year consulting arrangement and because he has not and cannot satisfy the conditions precedents for being issued and holding valid ownership of any shares granted under the consulting arrangement, including the 250,000 "restricted" shares which were to be issued on a quarterly basis pursuant to the consulting arrangement or the 200,000 shares granted under the Stock Grant Agreement, D. Goldin has not and cannot satisfy the conditions precedent for lifting the restrictions on their public resale.

### G. COMPLIANCE WITH ARTICLE 8 AND STATING AN ADVERSE CLAIM

55. Kaya is a Delaware corporation. Article 8 of the Delaware Code (*i.e.*, 6 Del. C. § 8-101 *et seq.*) controls.

56. Under 6 DEL. C. § 8-110, Delaware law, as the local law of the issuer's (Kaya's) jurisdiction, governs the validity of the shares of stock at issue, the rights and duties of the issuer (Kaya) regarding the registration of transfers at issue, the effectiveness of registration of transfers at issue, whether the issuer (Kaya) owes any duties to the adverse claimants (the Goldins), whether an adverse claim can be asserted, and the effectiveness of a restriction on transfer of stock/interest.

57. On December 20, 2016, Kaya received notice of the Goldins' demand to sell their Kaya shares, for Kaya to remove any and all restrictions on the sale of their shares and/or for Kaya to re-issue shares that are non-restricted and can be sold.

58. Shortly after the Goldins' demand, Kaya shares traded at $0.58 per share. The Goldins' purported expectation of value per share is at least $0.58. Therefore, multiplying this $0.58 price per share by the total shares at issue (the 2,222,222 D. Goldin "restricted" shares; the 2,222,222 W. Goldin "restricted" shares; the 250,000 D. Goldin "restricted" shares; and the 200,000 D. Goldin free-trading shares) is at least $2,838,777.52.

59. Kaya made a demand to its transfer agent that the shares not be transferred.

60. To date, Kaya has refused to approve and/or direct the removal of any and all restrictions on the transfer and sale of the Goldins' Kaya shares.

61. By virtue of this filing, legal process has been commenced to state an adverse claim, as defined by 6 DEL. C. § 8-102(a)(1), for the Kaya shares in which the Goldins claim an ownership interest and a right to publicly sell shares that can be sold.

62. The Goldins should be prevented from owning, obtaining, and/or selling any and all Kaya shares.

63. Kaya is entitled to take back, and thus the return of, any and all Kaya shares and/or stock certificates.

64. Under 6 DEL. C. § 8-401, Kaya, as issuer, is not required to register the transfer of securities to the Goldins because of the Goldins' material failures to disclose D. Goldin's criminal record. Therefore, Kaya, as issuer, is not required to register the transfer of securities to the Goldins because, at a minimum, (i) Kaya has an adverse claim for the shares held by the Goldins; and (ii) the transfer was not in fact rightful or to a protected purchaser.

65. Under 6 DEL. C. § 8-403, and by virtue of this filing, Kaya, as issuer, has promptly notified the Goldins that it refuses to register the transfer of the Kaya shares and has obtained legal process. This has all occurred within the required thirty (30) days of Kaya's notice of the Goldins' demand under 6 DEL. C. § 8-403, which permits an issuer to defer registration of transfer for a reasonable period of thirty (30) days from notice. Therefore, there has been no undue delay in the process of registration under 6 DEL. C. § 8-403.

66. All conditions precedent for asserting the subject claims have occurred, been satisfied, been executed or been waived.

## COUNT I
## DECLARATORY RELIEF UNDER 6 DEL. C. § 8-401

**(BOTH DEFENDANTS)**

67.     Kaya re-alleges and re-incorporates paragraphs 1 through 66 above as if fully set forth herein.

68.     Kaya would not have agreed to sell or issue shares to the Goldins under the Subscription Agreements under any circumstances if Kaya knew or the Goldins had disclosed D. Goldin's criminal record.

69.     Kaya would not have agreed to D. Goldin's consulting arrangement, including the Stock Grant Agreement and the consulting terms in the February 15, 2016 email, under any circumstances if Kaya knew or the Goldins had disclosed D. Goldin's criminal record.

70.     Kaya has an existing controversy with the Goldins concerning whether: (i) the Goldins are entitled to the subject Kaya shares and any other benefit of stock ownership; (ii) the Goldins are entitled to registration of transfer of the subject Kaya shares; (iii) the preconditions for the registration of transfer of the subject Kaya shares have been satisfied; (iv) Kaya is under a duty to register the transfer of the subject Kaya shares; and (v) the Goldins are entitled to a re-issue of Kaya shares that are non-restricted and can be sold.

71.     The bona fide, actual, present, and practical need for a declaration of whether (i) the Goldins are entitled to the subject Kaya shares and any other benefit of stock ownership in Kaya, (ii) the Goldins are entitled to registration of transfer of the subject Kaya shares, (iii) the preconditions for the registration of transfer of the subject Kaya shares have been satisfied, (iv) Kaya is under a duty to register the transfer of the subject Kaya shares, and (v) the Goldins are entitled to a re-issue of Kaya shares that are non-restricted and can be sold, is within the purview of a declaratory judgment or relief, in that:

  a.     The declaration deals with a present, ascertained state of facts or present

       controversy as to the state of facts;

    b. A power, privilege, or right of Kaya is at issue;

    c. A purported power, purported privilege, or purported right of the Goldins is at issue;

    d. The parties have an actual, antagonistic, and adverse interest with each other, either in law or fact; and

    e. The declaration sought by Kaya is not merely giving legal advice or the answers to questions propounded by curiosity.

72. Kaya seeks a declaration that: (i) the Goldins are not entitled to the subject Kaya shares and any other benefit of stock ownership in Kaya; (ii) the Goldins are not entitled to registration of transfer of the subject Kaya shares; (iii) the preconditions for the registration of transfer of the subject Kaya shares have not been satisfied; (iv) Kaya is not under a duty to register the transfer of the subject Kaya shares; and (v) the Goldins are not entitled to a re-issue of Kaya shares that are non-restricted and can be sold.

WHEREFORE, Kaya demands this Court to enter a declaratory judgment against the Goldins stating that (i) the Goldins are not entitled to the subject Kaya shares and any other benefit of stock ownership in Kaya; (ii) the Goldins are not entitled to registration of transfer of the subject Kaya shares; (iii) the preconditions for the registration of transfer of the subject Kaya shares have not been satisfied; (iv) Kaya is not under a duty to register the transfer of the subject Kaya shares; and (v) the Goldins are not entitled to a re-issue of shares that are non-restricted and can be sold. In addition, Kaya demands that this Court enter such other and additional relief as the Court deems just and proper.

## COUNT II
## RESCISSION

**(BOTH DEFENDANTS)**

73. Kaya re-alleges and re-incorporates paragraphs 1 through 66 above as if fully set forth herein.

74. There was a relationship between the Goldins and Kaya through the Subscription Agreements and D. Goldin's consulting arrangement, including the Stock Grant Agreement and the consulting terms in the February 15, 2016 email.

75. Therefore, there has been a making of a contract with the Goldins, through the Subscription Agreements and D. Goldin's consulting arrangement, including the Stock Grant Agreement and the consulting terms in the February 15, 2016 email.

76. The Goldins made material misrepresentations in failing to disclose D. Goldin's criminal record and, had they done so, Kaya would not have agreed to issue the Kaya shares under the Subscription Agreements and would not have agreed to the consulting arrangement with D. Goldin, including the Stock Grant Agreement and the terms in the February 15, 2016 email.

77. The Goldins knew that Kaya would not have issued any Kaya shares to them had Kaya known about D. Goldin's criminal record.

78. As a result of such material misstatements, omissions and fraudulent and intentional concealments, the Subscription Agreements and the consulting arrangement, including the Stock Grant Agreement and the consulting terms in the February 15, 2016 email, are void, unlawful and invalid, and thus should be rescinded.

79. The Goldins and Kaya can be returned to the *status quo ante*, and thus substantially the same positions pre-contract, because their $100,000.00 for making the investments can be returned to them by Kaya and the interest in shares and/or certificates can be returned to Kaya by the Goldins, respectively. Kaya offers to restore the two $100,000.00 payments ($200,000.00 in

total) plus interest, and any other rightful benefits to the Goldins.

80. Kaya recently discovered D. Goldin's criminal record and has acted with reasonable diligence.

81. Kaya has promptly rescinded the Subscription Agreements and the consulting arrangement, including the Stock Grant Agreement and the consulting terms in the February 15, 2016 email, after discovering D. Goldin's criminal record.

82. By virtue of this filing, Kaya has notified the Goldins of its rescission of the Subscription Agreements and the consulting arrangement, including the Stock Grant Agreement and the consulting terms in the February 15, 2016 email.

83. Kaya does not have an adequate remedy at law.

WHEREFORE, Kaya demands this Court to enter judgment against the Goldins rescinding the two attached Subscription Agreements and the D. Goldin consulting arrangement, including the attached Stock Grant Agreement and the consulting terms in the attached February 15, 2016 email. In addition, Kaya demands that this Court enter such other and additional relief as the Court deems just and proper.

### COUNT III
### UNJUST ENRICHMENT
### (BOTH DEFENDANTS)

84. Kaya re-alleges and re-incorporates paragraphs 1 through 66 above as if fully set forth herein.

85. This is an equitable claim of unjust enrichment against the Goldins.

86. Kaya conferred a substantial direct benefit on the Goldins, namely they received and/or benefitted from, at a minimum, the following stock certificates: (i) Certificate Number 4576 registered to D. Goldin for 2,222,222 Kaya shares; (ii) Certificate Number 4575 registered to W.

Goldin for 2,222,222 Kaya shares; and (iii) Certificate Number 4577 registered to D. Goldin for 250,000 Kaya shares.

87. The Goldins made material misrepresentations in failing to disclose D. Goldin's criminal record and, had they done so, Kaya would not have agreed to issue the Kaya shares under the Subscription Agreements and would not have agreed to the consulting arrangement with D. Goldin, including the Stock Grant Agreement and the consulting terms in the February 15, 2016 email.

88. The Goldins knew that Kaya would not have issued any Kaya shares to them had Kaya known about D. Goldin's criminal record.

89. The Goldins requested the benefit they obtained and knew or should have known that they wrongfully and unjustifiably received and/or benefitted from the stock certificates due their material misstatements, omissions and fraudulent and intentional concealments of D. Goldin's criminal record.

90. Notwithstanding, the Goldins voluntarily accepted and retained the stock certificates.

91. In receiving the stock certificates, the Goldins have unjustly retained a direct benefit to the detriment of Kaya. Therefore, the Goldins have received an enrichment which is unjust in relation to the above circumstances, and Kaya has suffered an impoverishment in relation to the above circumstances. There is a relationship between the Goldins' enrichment of stock certificates and Kaya's impoverishment of same under the above circumstances.

92. There is an absence of justification for the Goldins to be able to retain the direct benefit of receiving the stock certificates under the above circumstances. Therefore, it is inherently unjust, unfair, and inequitable that the Goldins be able to retain the direct benefit of receiving the

stock certificates under the above circumstances.

93. Based on the above circumstances, equity dictates that the Goldins return to Kaya the stock certificates.

94. Kaya does not have an adequate remedy at law.

WHEREFORE, Kaya demands this Court to enter judgment against the Goldins that they return the stock certificates to Kaya. In addition, Kaya demands that this Court enter such other and additional relief as the Court deems just and proper.

Respectfully submitted,

**SALLAH ASTARITA & COX, LLC**
*Counsel for Kaya Holdings, Inc.*
One Boca Place
2255 Glades Road, Ste. 300E
Boca Raton, FL 33431
Tel.: (561) 989-9080
Fax: (561) 989-9020

/s/Joshua A. Katz, Esq.
**Joshua A. Katz, Esq.**
Fla. Bar No. 0848301
**James D. Sallah, Esq.**
Fla. Bar No. 092584